

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Fred Norris
County Auditor
Polk County
Livingston, Texas

Dear Sir:

Opinion No. O-2111
Re: Authority of the Commis-
sioners' Court to make
improvement upon county
school land from the pro-
ceeds obtained from the lease
thereof and a related ques-
tion.

Your request for an opinion upon the above stated
question has been received and considered by this department.
To gain assurance that we present the problem correctly, we
quote, as follows, the pertinent portion of your letter:

"1. Can the Commissioners' Court build a
house or other necessary improvements on County
owned school land and pay for same out of the
rent received from said land, as outlined above,
that is keep up the improvements that they have
acquired by foreclosure of a tenant?

"2. Can The Commissioners' Court charge off
rent as a bad account, when they have exhausted
every means to collect same, and demand the State
School board to give us credit for same?"

Article 7, Section 6 of the Constitution of Texas
provides as follows:

"Sec. 6. All lands heretofore or hereinafter
granted to the several counties of this State for edu-
cational purposes, are of right the property of said
counties respectively, to which they were granted,
and title thereto is vested in said counties, and no
adverse possession or limitation shall ever be avail-
able against the title of any county. Each county

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Fred Norris, Page 2

may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners' Court of the county. Actual settlers residing on said lands, shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed one hundred and sixty acres, at the price fixed by said court, which price shall not include the value of existing improvements made thereon by such settlers. Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities, and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon, and other revenue, except the principal shall be available fund."

This provision of the Constitution merely confers upon the counties the power to dispose of its school lands and does not place them under a duty to sell them. Therefore, the framers of the Constitution clearly contemplated that the various counties, acting by and through their commissioners' courts, shall have the power and authority to derive a revenue or profit from their land by lease, if they deemed this best for the interest of the public schools. Falls County vs. De-Laney, 73 Tex. 463.

Article 2826, Revised Civil Statutes, 1925, provides:

"It shall be the duty of the commissioners court to provide for the protection, preservation and disposition of all lands heretofore granted, or that may hereafter be granted to the county for education or schools."

Article 2825, Revised Civil Statutes, 1925, provides that:

". . . the proceeds of any leasing or renting of lands, heretofore granted by the State of Texas to the several counties thereof for educational purposes, shall be appropriated by the commissioners courts of said counties in the same manner as is provided by law for the appropriation of the interest on bonds purchased with the proceeds of the sale of such lands; and the proceeds arising

533

from the sale of timber on said lands, or any part
thereof, shall be invested in like manner as the
Constitution and law requires of proceeds of sales
of such lands; and it shall be unlawful for the com-
missioners court of any county to apply said proceeds,
or any part thereof, to any other purpose, or to
loan the same, except as above required."

Thus, we observe Article 2825, supra, in plain and
unambiguous language, provides in what manner the income from
the lease of school lands shall be used. It "shall be appro-
priated by the commissioners courts of said counties in the
same manner as is provided by law for the appropriation of the
interest on bonds purchased with the proceeds of the sale of
such lands". Article 7, Section 6 of the Constitution, supra,
stipulates that the interest derived from the investment of
the proceeds of a sale shall be placed in, and constitute, the
available school fund. Therefore, the proceeds from any rent-
ing or leasing of the school lands must also be placed in that
fund. By its terms Article 2825, supra, makes any other disposi-
tion unlawful.

Consequently, we must find, and you are respectfully
advised, that the commissioners' court of Polk County cannot
build a house or make other improvements upon county owned
school land with funds derived from the rental or lease of said
lands.

To do so would constitute an unlawful act, and further,
since in legal contemplation, the county is a trustee, and the
school fund the beneficiary, there would be a breach of trust.
See Taber vs. Dallas County, 101 Tex. 241. Since the school
monies go to make up a trust fund, so to speak, and the commis-
sioners' court is charged with the duty of administering that
fund, its powers, duties, and liabilities towards that fund should
be governed by the law pertaining to trustees. Therefore, in the
administration of the fund the commissioners' court is bound by
that degree of care and effort which reasonably prudent men exer-
cise when tending their own affairs. In the execution of a trust,
expressed or implied, the commissioners' court has power and
authority to collect all that is due and owing that fund even to
the point of instituting and maintaining suits at law. Not only
is this their power but in some instances it might be termed a
duty. See 3 Bogert's Trust and Trustees, Section 481, et seq.

Honorable Fred Morris, Page 4

After exhausting all reasonable means, under the facts and circumstances of particular instances, to collect an account due and owing the fund, we can find no express or implied prohibition in law or reason preventing a commissioners' court from charging off said account as uncollectible. To hold otherwise would open wide the doors for ficticious and chimerical finuncial statements of the county's affairs.

There are not sufficient facts presented to enable us to pass upon the question of whether or not the "State School Board" would be required to "credit" the county with uncollectible accounts. It would seem that the Department of Education would take cognizance of, and act accordingly, in their sound discretion, upon proper showing and proof of those accounts. We have no right of assumption that equity will not be done when seasonally demanded and properly deserved.

Trusting that the above satisfactorily answers your questions, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By     Wm. J. Fanning
         Assistant

By     Grundy Williams

GW:jm:ew

APPROVED APR 20, 1940

FIRST ASSISTANT
ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN